IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**SLOCUMB LAW FIRM, LLC**

                    **Plaintiff,**

   **v.**                                           Civil Action No. 1:11-cv-01806-EGS

**ZEKE ROESER, MORGAN**                             ECF CASE
**WHITLOCK, KEVIN GRACIE, and**
**ROESER & WHITLOCK LLP,**

                    **Defendants.**

---

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

October 17, 2011                          ADAM S. HOFFINGER, D.C. Bar No. 431711
                                          ROBERT A. SALERNO, D.C. Bar No. 430464
                                          JEREMY B. MERKELSON, D.C. Bar No. 997281
                                          MORRISON & FOERSTER LLP
                                          2000 Pennsylvania Avenue, N.W., Suite 6000
                                          Washington, D.C.  20006-1888
                                          Telephone: 202.887.1525
                                          Facsimile: 202.887.0763

                                          *Counsel for Defendants Roeser, Whitlock,
                                          Gracie, and Roeser & Whitlock LLP*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ....................................................................................................................... 3

I.   THE LEGAL STANDARD FOR ISSUANCE OF A TEMPORARY
     RESTRAINING ORDER ........................................................................................ 3

II.  SLOCUMB HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS ................. 4

     A.   Slocumb's Claim for Misappropriation of Trade Secrets Has No
          Merit ............................................................................................................... 4

     B.   Slocumb's Claims for Breach of Fiduciary Duty and Tortious
          Interference Have No Merit .............................................................................. 7

III. SLOCUMB HAS MADE NO SHOWING OF IRREPARABLE HARM .................. 8

IV.  THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST WEIGH
     AGAINST ISSUANCE OF A TEMPORARY RESTRAINING ORDER ................. 9

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

CASES

*Al-Fayed v. Central Intelligence Agency*,
   254 F.3d 300 (D.C. Cir. 2001) ........................................................................................ 3

*Alf v. Donley*,
   666 F. Supp.2d 60 (D.D.C. 2009) ................................................................................... 9

*American Association for Homecare v. Leavitt*,
   No. 08-0992, 2008 WL 2580217 (D.D.C. 2008) ....................................................... 8

*Chaplaincy of Full Gospel Churches v. England*,
   454 F.3d 290 (D.C. Cir. 2006) ............................................................................ 3, 4, 7, 8

*CityFed Fin. Corp. v. OTS*,
   58 F.3d 738 (D.C. Cir. 1995) .................................................................................. 3, 8

*Cohen v. Lord, Day & Lord*,
   550 N.E.2d 410 (N.Y. 1989) ....................................................................................... 10

*Early, Ludwick & Sweeney, LLC v. Steele*,
   Case No. CV980409063S, 1998 Conn. Super LEXIS 2256
   (Conn. Super. Ct. Aug. 7, 1998) ................................................................................. 5

*Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*,
   749 A.2d 724 (D.C. 2000) ............................................................................................ 4

*Experience Works, Inc. v. Chao*,
   267 F. Supp. 2d 93 (D.D.C. 2003) .............................................................................. 3

*Farris v. Rice*,
   453 F. Supp. 2d 76 (D.D.C. 2006) .............................................................................. 3

*Fred Siegel Co. v. Arter & Hadden Siegel*,
   707 N.E.2d 853 (Ohio 1999) ........................................................................................ 6

*Katz v. Georgetown Univ.*,
   246 F.3d 685 (D.C. Cir. 2001) ..................................................................................... 3

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ....................................................................................................... 3

*Serono Labs., Inc. v. Shalala*,
   158 F.3d 1313 (D.C. Cir. 1998) ................................................................................... 3

**Page(s)**

CASES (CONTINUED)

*Walker v. Gribble*,
    689 N.W.2d 104 (Iowa 2004) ................................................................................ 1

STATUTES

D.C. Code § 36-401(1) ............................................................................................ 6

D.C. Code § 36-401(2)(A), (B) ............................................................................... 6

D.C. Code § 36-403(a) ............................................................................................ 8

OTHER AUTHORITIES

ABA Comm. on Professional Ethics, Formal Op. 300 (1961) ................................ 9

D.C. Bar Legal Ethics Op. 273 (adopted Sept. 17, 1997) ...................................... 5

D.C. R. Prof. Conduct 1.4 ....................................................................................... 4

Robert W. Hillman, *The Property Wars of Law Firms: Of Client Lists, Trade Secrets, and
    the Fiduciary Duties of Law Partners*, 30 Fla. St. Univ. L. Rev. 767 (2003) …...................... 7

Defendants Zeke Roeser, Morgan Whitlock, Kevin Gracie, and Roeser & Whitlock LLP, through undersigned counsel, hereby oppose the Motion for a Temporary Restraining Order filed by Plaintiff, Slocumb Law Firm, LLC ("Slocumb"), and state as follows:

## INTRODUCTION

When lawyers leave a law firm, they have an ethical obligation to communicate that fact to their clients.  Defendants Zeke Roeser and Morgan Whitlock left Slocumb to start their own law firm, while Kevin Gracie left Slocumb to start his own solo practice.  Complying with their ethical obligations, they communicated their departures to their clients.  Consistent with the ethical rules and the guidance they had received from the District of Columbia, Maryland, and Virginia Bars, they told their clients that they could stay with Slocumb, continue to be represented by defendants, or hire new counsel altogether.  They did not steal any proprietary information from Slocumb or commit any tortious conduct.  They did nothing other than what they were supposed to do as departing lawyers.

Slocumb's baseless suit is grounded on the faulty premise that Slocumb owns the clients that were represented by Roeser, Whitlock, and Gracie.  It does not.  "A lawyer's clients are not chattels to be bought and sold."  *Walker v. Gribble*, 689 N.W.2d 104, 112 (Iowa 2004).  Law firms are different creatures from other commercial entities.  Clients choose their lawyers and they have the right to be informed when their counsel depart to join another firm.  A client has the right to withdraw from the representation and to demand that their former counsel deliver the client's files as directed to newly hired counsel.  Slocumb cannot use trade secret law as a back door to impose restraints on clients and lawyers that have long since been eradicated by our legal system as inconsistent with the ethics of the profession.

There is no basis for injunctive relief.  Slocumb cannot make the required showing under the controlling test in this jurisdiction.  Indeed, Slocumb has no likelihood of success on the

merits and it has not suffered any harm, much less irreparable harm.   For either of these independent reasons, the Court should deny the motion.

**STATEMENT OF FACTS**

Defendants Roeser, Whitlock, and Gracie were associates at Slocumb until they resigned earlier this month.  *See* Declarations of Zeke Roeser, ¶ 3 ("Roeser Decl."), Morgan Whitlock, ¶ 3 ("Whitlock Decl."), and Kevin Gracie, ¶ 3 ("Gracie Decl.), attached to this memorandum. Roeser and Whitlock started their own firm in the District of Columbia, Roeser & Whitlock LLP. (Roeser Decl. ¶ 4, Whitlock Decl. ¶ 4.)  Gracie started his own practice as a solo practitioner in the District of Columbia.  (Gracie Decl. ¶ 4.)

On or about the dates they resigned from Slocumb, Roeser, Whitlock, and Gracie communicated their departures to their clients.  Each sent a form letter to the clients on whose matters he or she worked while associated with Slocumb.  The letters notified their clients of their departures and informed their clients of their options for future representation.  (Roeser Decl. ¶ 5, Whitlock Decl. ¶ 5, Gracie Decl. ¶ 5.)  They did not send letters to any clients on whose matters they did not work while associated with Slocumb.  (Roeser Decl. ¶ 6, Whitlock Decl. ¶ 6, Gracie Decl. ¶ 6.)  Each was the primary Slocumb attorney and point of contact for all of the clients to whom they sent letters.  (Roeser Decl. ¶ 6, Whitlock Decl. ¶ 6, Gracie Decl. ¶ 6.)

In connection with their departures from Slocumb, Roeser and Whitlock contacted representatives of the District of Columbia, Virginia, and Maryland Bars to obtain ethics guidance, particularly as to their obligations to the clients on whose matters they worked while associated with Slocumb.   (Roeser Decl. ¶ 7; Whitlock Decl. ¶¶ 7-8.)   They received confirmation that a neutral form letter would be appropriate under the applicable rules governing attorney conduct in the District of Columbia, Virginia, and Maryland.  (*Id.*)   Roeser and Whitlock communicated the guidance they had received from the Bars to Gracie, who relied on

that guidance to draft his own neutral form letter to clients.  (Gracie Decl. ¶ 7.)

Shortly after the letters were sent to their clients and the Defendants parted ways with the firm, Slocumb filed this lawsuit on or about October 13, 2011.

## ARGUMENT

I.   **THE LEGAL STANDARD FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER.**

A temporary restraining order is an "extraordinary and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  A party that seeks injunctive relief pursuant to a motion for a temporary restraining order must show: (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable injury if the injunction were not granted; (3) that an injunction would not substantially injure other interested parties; and (4) that the public interest would be furthered by the injunction.  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *see also Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 303 (D.C. Cir. 2001); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998).  The same standard applies to both temporary restraining orders and preliminary injunctions.  *Experience Works, Inc. v. Chao*, 267 F. Supp. 2d 93, 96 (D.D.C. 2003).

These four factors "interrelate on a sliding scale and must be balanced against each other." *Serono Labs., Inc.*, 158 F.3d at 1318.  However, if the moving party fails to show a likelihood of success on the merits, the court may deny the temporary injunction motion without reaching the other three factors. *See Katz v. Georgetown Univ.*, 246 F.3d 685, 688 (D.C. Cir. 2001).  Similarly, a party's failure to establish any irreparable injury is also fatal.  *See CityFed Fin. Corp. v. OTS*, 58 F.3d 738, 747 (D.C. Cir. 1995); *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006).

The movant bears the burden of persuasion, and may obtain a temporary injunction only

3

upon a "clear showing" that it is entitled to that extraordinary remedy.  *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

## II.     SLOCUMB HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS.

Slocumb alleges that the Defendants committed tortious acts that give rise to three separate claims, for misappropriation of trade secrets (Compl. at Count I), breach of fiduciary duty (*id*. at Count II), and tortious interference with economic advantage (*id*. at Count III).[1] Because there is no likelihood of success on any of these claims, the motion for a temporary restraining order should be denied.

### A.     Slocumb's Claim for Misappropriation of Trade Secrets Has No Merit.

Slocumb cannot succeed on the merits of its trade secret misappropriation claim.  Such an outcome, if applied to the instant case, would directly contradict Rule 1.4 of the D.C. Rules of Professional Conduct, which obligates a lawyer to keep a client informed "about the status of a matter" and to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

The District of Columbia Bar has issued a legal ethics opinion directly addressing the departing lawyer's ethical obligations:

> Under the Rules of Professional Conduct, a lawyer responsible for a client's matter would be obligated to inform that lawyer's clients of his/her planned departure and of the lawyer's prospective new affiliation, and to advise the client whether the lawyer will be able to continue to be able to represent it.  In most situations, a lawyer's change of affiliation during the course of a representation will be material to a client … Thus, not only does Rule 1.4 require the lawyer to

---

[1] Slocumb also alleges that the Defendants are liable for civil conspiracy (Compl. at Count IV). However, a claim for civil conspiracy can succeed only if the underlying tortious claims upon which it is premised are first established.  *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp*., 749 A.2d 724, 738 (D.C. 2000) ("[plaintiff's] civil conspiracy claim premised on an economic tort theory fails as a matter of law for lack of an underlying tortious act").  Therefore, because there is no likelihood of success on the underlying tort claims, there is no likelihood of success on the civil conspiracy claim either.

> communicate his prospective change of affiliation to the client, but such
> communication must occur sufficiently in advance of the departure to give the
> client adequate opportunity to consider whether it wants to continue the
> representation by the departing lawyer and, if not, to make other representation
> arrangements.

D.C. Bar Legal Ethics Op. 273 (adopted Sept. 17, 1997) (citation omitted).  Roeser, Whitlock, and Gracie took great care that the letters they sent to clients complied in all respects with their ethical obligations to the clients and to Slocumb.  In fact, they even contacted legal ethics counsel at the District of Columbia, Maryland, and Virginia Bars to confirm this understanding and to make sure that they did things the right way.  *Supra* at 2.

No District of Columbia court – federal or state – has ever held that a law firm's client's contact information is a trade secret that cannot be used by a departing lawyer to communicate with his or her clients.  This is not surprising, as it would be inconsistent with the above clear dictates of the ethical rules governing departing lawyers in this jurisdiction.  Indeed, only two cases outside of this jurisdiction have ever addressed whether trade secret protection applies in the departing lawyer context.  One case from Connecticut that did so, *Early, Ludwick & Sweeney, LLC v. Steele*, Case No. CV980409063S, 1998 Conn. Super. LEXIS 2256 (Conn. Super. Ct. Aug. 7, 1998), carefully distinguished law firms from commercial enterprises in rejecting the claim that a law firm client list constituted a trade secret.  The *Steele* Court, in rejecting the misappropriation claim, stated:

> The central issue in the case--the use by Steele of the client list--and the relief
> sought by the plaintiff--an order enjoining Steele from using the list--directly
> implicate the said clients' right to choose their representation. While a law firm
> has a legitimate interest in its own survival and economic well-being and in
> maintaining its clients, it cannot protect those interests . . . by, in effect, restricting
> the choices of the clients to retain and continue the withdrawing member as
> counsel.

*Steele*, 1998 Conn. Super. LEXIS 2256 at *12 (citation and internal quotations omitted).

The other case, an Ohio Supreme Court decision cited in Slocumb's motion, *Fred Siegel Co. v. Arter & Hadden Siegel*, 707 N.E.2d 853, 862-63 (Ohio 1999), held that a law firm client list may constitute a trade secret. However, *Siegel* involved key facts different from those at issue here and was accompanied by a forceful dissent, which stated "[r]espect for a client's choice demonstrates to the client and to the public that the lawyer and law firm are truly practicing a profession." *Id.* at 864 (Cook, J., dissenting). Of particular note, the departing associate in *Siegel* sent a letter to her former law firm's clients that did not inform them of their options with respect to future representation, but instead solicited them, stating as follows: "I would like for us to continue our professional relationship. When you need assistance or have questions, please contact me." *Id.* at 853. By contrast, Roeser, Whitlock, and Gracie did nothing more than notify the clients with whom they worked of their option to choose their own representation moving forward. *Supra* at 2. Accordingly, *Siegel*, a split decision from an Ohio state court with critical facts distinguishable from those at issue in this case, is inapplicable. At a minimum, it hardly demonstrates likelihood of success on the merits.

Even if a law firm's client list were deemed a trade secret – which it should not be due to the ethical considerations discussed above – Slocumb's trade secrets claim would still lack merit because Defendants have not "misappropriated" anything. Misappropriation requires either acquisition, use, or disclosure by "improper means" (*see* D.C. Code §§ 36-401(2)(A), (B)(i), (B)(ii)(I)) or use or disclosure under circumstances where a person has a duty to maintain its secrecy or limit its use (*id*. at subsec. (B)(ii)(II)-(III)). "Improper means" is in turn defined as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." D.C. Code § 36-401(1). Thus, to prove misappropriation, Slocumb must prove that the departing lawyers had a duty not to

communicate their departures to their clients, despite ethics rules dictating that they must do so.

A law professor who has closely studied this issue, Professor Robert W. Hillman, explains the problem with such an outcome:

> Imposing on a particular lawyer the duty to maintain secrecy of the information necessarily requires the lawyer to refrain from using or disclosing the information following withdrawal from the firm. This, in turn, impedes the ability of the lawyer to communicate with and provide services to clients for whom the lawyer worked while at the firm. Such a result would serve as a direct restraint on competition with the firm and could undermine significantly the ability of clients to choose their lawyers.

Robert W. Hillman, *The Property Wars of Law Firms: Of Client Lists, Trade Secrets, and the Fiduciary Duties of Law Partners*, 30 Fla. St. Univ. L. Rev. 767, 783 (2003).

Thus, for all of these reasons, including that trade secret protection is inapplicable under the current circumstances, Slocumb is unlikely to succeed on its misappropriation claim.

## B. Slocumb's Claims for Breach of Fiduciary Duty and Tortious Interference Have No Merit.

Slocumb accuses the Defendants of violating their fiduciary obligations to the firm and committing tortious interference because "their solicitation of the at-issue clients went far beyond neutrally informing the clients of Defendants' planned departure and formation of a new firm."   (Plaintiff's Memorandum of Law ("Plaintiff's Mem.") at 11.)   This is a baseless accusation, which is contradicted by the clear, neutral language of the form letters that Roeser, Whitlock, and Gracie sent to their clients.  *See*, *e.g.*, the letters attached to the Declarations of Roeser, Whitlock, and Gracie.  Because Slocumb points to no facts to support these claims other than the letters that the Defendants sent to their clients in connection with their departures, Plaintiff has not satisfied its burden to make a "clear showing" that extraordinary temporary injunctive relief is warranted on the fiduciary duty and tortious interference claims.  *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

### III.    SLOCUMB HAS MADE NO SHOWING OF IRREPARABLE HARM.

Irreparable harm may not be presumed in this case, despite Slocumb's reliance on an overturned Ninth Circuit decision for that proposition.  *See* Plaintiff's Mem. at 11 (citing *Burlington N.R.R. Co. v. Dep't of Revenue*, 934 F.2d 1064, 1074 (9th Cir. 1991)).[2]  The controlling law in this Circuit is that "if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors." *American Association for Homecare v. Leavitt*, No. 08-0992, 2008 WL 2580217, at *8 (D.D.C. 2008), *citing CityFed Fin. Corp,* 58 F.3d at 747.  As the D.C. Circuit has recognized: "The key word in this consideration is 'irreparable.'  Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough."  *Chaplaincy of Full Gospel Churches*, 454 F.3d at 298.

Slocumb fails to show why, in the absence of temporary injunctive relief, it will suffer irreparable harm.  To begin with, the communications by Roeser, Whitlock, and Gracie to their clients, which Slocumb wishes to restrain, have already taken place.  Furthermore, Slocumb admits that its damages relate to "expend[ing] millions of dollars establishing a Washington D.C. office and the client base which supports it" (Plaintiff's Mem. at 12) and the loss of clients "representing over a million dollars in anticipated revenue" (*id.*).  These alleged damages to the bottom line are obviously compensable by monetary relief, and thus are plainly insufficient to support a showing of irreparable harm.

Slocumb also alleges that it will suffer some unspecified damage to its business reputation and customer good will.  *See* Plaintiff's Mem. at 12.  The basis for such purported

---

[2] There is no presumption of irreparable harm in trade secret misappropriation cases.  Rather, DUTSA recognizes that the harm caused by misappropriation may be compensated in the form of money damages for causing "actual loss" to the Plaintiff or "unjust enrichment" to the Defendant.  D.C. Code § 36-403(a).  Therefore, any presumption of harm in this case would be contrary to both the controlling case law and the statute.

damages is Slocumb's argument that its clients' "trust will be irretrievably damaged if Defendants are permitted to continue exploiting confidential client information for their own purposes." (*Id.*) This argument is based on the misguided belief that clients are property. Beyond that, there can be no reputational injury to Slocumb from communicating to clients the departures of Roeser, Whitlock, and Gracie, and permitting those clients to have their counsel of choice represent them. In fact, it is the failure to make such communications to clients in contravention of the ethics rules that could cause reputational injury, not studiously following the ethical rules as Defendants have done.

Thus, because Slocumb has not made the requiring showing of irreparable injury, the motion for a temporary restraining order should be denied.

## IV.   THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST WEIGH AGAINST ISSUANCE OF A TEMPORARY RESTRAINING ORDER.

The balance of the equities and public interest prongs of the analysis are "inextricably linked to the plaintiff's likelihood of success on merits." *Alf v. Donley*, 666 F. Supp.2d 60, 71 (D.D.C. 2009). Because Slocumb has no likelihood of success on the merits, as explained above, these elements point in favor of Defendants.

The position that Slocumb advocates in this lawsuit threatens the public interest, as expressed in decades-old case law invalidating non-competition covenants among lawyers. As the American Bar Association stated fifty years ago, rejecting the concept of contractual arrangements limiting a lawyer's right to practice:

> Clients are not merchandise. Lawyers are not tradesmen. They have nothing to sell but personal service. An attempt, therefore, to barter in clients, would appear to be inconsistent with the best concepts of our professional status.

ABA Comm. on Professional Ethics, Formal Op. 300 (1961). Based on this rationale, D.C. lawyers have long since been barred from entering restrictive covenants (*see* Rule 5.6), and

courts have long refused to enforce even contractual disincentives to compensation that fall short of outright restrictive covenants. *See*, *e.g.*, *Cohen v. Lord, Day & Lord*, 550 N.E.2d 410 (N.Y. 1989).  In effect, this lawsuit aims to use trade secret law as a back door to imposing duties on lawyers that have long since been invalidated by accepted ethical norms of the legal community.

The public interest would be furthered by denying the motion for a temporary restraining order in this case.  Slocumb's clients are not property.  They have a right to be informed about the status of their matters, including the departures of the lawyers representing them, and they have a right to choose the counsel who will represent them going forward.  To enjoin Roeser, Whitlock, and Gracie for this conduct would, in effect, eviscerate the principle of client choice in our legal system.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Temporary Restraining Order should be denied.

Respectfully submitted,

**s/ Robert A. Salerno_____**
ADAM S. HOFFINGER (D.C. Bar No. 431711)
ROBERT A. SALERNO (D.C. Bar No. 430464)
JEREMY B. MERKELSON (D.C. Bar No. 997281)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, N.W., Suite 6000
Washington, D.C.  20006-1888
Telephone: 202.887.1525
Facsimile: 202.887.0763

*Counsel for Defendants Roeser, Whitlock, Gracie,
and Roeser & Whitlock LLP*

## CERTIFICATE OF SERVICE

I certify that on October 17, 2011, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record, and that the foregoing was also served via electronic mail to the below counsel of record for Plaintiff Slocumb Law Firm, LLC:

Rodney R. Sweetland, III
McKool Smith, P.C.
1999 K Street, N.W.
Suite 600
Washington, D.C. 20006
Tel:  (202) 370-8300
Fax: (202) 370-8344
rsweetland@mckoolsmith.com


                                  /s/
                        _____
                        JEREMY B. MERKELSON