IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SLOCUMB LAW FIRM, LLC,**<br><br>     **Plaintiff,**<br><br>v.<br><br>**ZEKE ROESER, ET AL.,**<br><br>     **Defendants.** | Civil Action No. 1:11-cv-01806-EGS<br><br>ECF CASE |

### DEFENDANTS' MOTION TO TRANSFER CLIENT FILES

Defendants/Counterclaim-Plaintiffs Zeke Roeser, Morgan Whitlock, and Roeser & Whitlock LLP ("R&W") (collectively, "the R&W Parties"), through undersigned counsel, hereby move this Court for an order requiring that Plaintiff Slocumb Law Firm, LLC ("SLF") transfer to R&W certain electronically stored information that constitutes part of the "client file" of former SLF clients who have elected to retain R&W.

### FACTUAL BACKGROUND

On October 7, 2011, Roeser and Whitlock resigned from SLF and thereafter began practicing law as R&W. The R&W Parties were promptly sued by SLF, which did not immediately transfer any client files to R&W. On November 4, 2011, this Court issued a minute order directing SLF to transfer to R&W forthwith the client files of all former SLF clients who had elected to be represented by R&W. Thereafter, on November 28, 2011, the R&W Parties informed SLF that it had failed to transfer *any* data contained in a Needles Case Management Software Database ("Needles"), which was used by SLF as a repository of information necessary to the representation of these clients. (A copy of the letter is attached hereto as Exhibit A). The R&W Parties again raised this issue during the parties' "meet and confer" teleconference on

December 9, 2011, and orally before the Court on December 14, 2011, leading the Court to order briefing on this issue.

Needles was used by SLF as a storage medium for information relating to all of the client matters handled by SLF, including all of the client matters on which Roeser and Whitlock worked while associated with SLF. (*See* Declaration of Zeke Roeser at ¶ 3 and Declaration of Morgan Whitlock at ¶ 3, attached hereto as Exhibits B and C, respectively.) The data stored in Needles includes, but is not limited to, the following:

- Every note and mental impression of the responsible attorney and paralegals on a given case, including records of communications between SLF and clients, insurance adjusters, opposing counsel, and police officers. (Ex. B at ¶ 3(c); Ex. C at ¶ 3(c).)

- Contact information for all insurance companies and adjusters involved, including the company name, address, adjuster, telephone number, fax number, whether the company has accepted liability, the type of insurance coverage, policy number, claim number, name of the insured, and available policy limits. (Ex. B at ¶ 3(d); Ex. C at ¶ 3(d).)

- Names, birth dates, social security numbers, contact information, marital status, employers, and other information relating to the parties. (Ex. B at ¶ 3(a); Ex. C at ¶ 3(a).)

- The date of accident, date of the opening of the file, date of case intake, staff responsible for handling the file, accident synopsis, accident location, accident type, case caption if in litigation, the date a demand was sent, the date a suit was filed, and all other relevant litigation deadlines. (Ex. B at ¶ 3(b); Ex. C at ¶ 3(b).)

- Correspondence, photographs of accidents, and other scanned records. (Ex. B at ¶ 3(e); Ex. C at ¶ 3(e).)

- Police department information and police reports, if applicable. (Ex. B at ¶ 3(f); Ex. C at ¶ 3(f).)

- Expenses for ordering medical records and bills, police reports, payments for process service, filing fees, travel expenses, copying, and postage. (Ex. B at ¶ 3(g); Ex. C at ¶ 3(g).)[1]

---

[1] The R&W Parties have specifically requested that SLF provide a list of SLF's expenses, and any supporting documentation, for each of the R&W clients formerly represented by SLF. SLF has refused to list its expenses for the now-R&W clients except for those clients whose matters have already settled, claiming that such disclosure would unnecessarily burden SLF. As a result, disbursements to clients whose matters have settled were delayed while R&W waited for SLF to provide its claimed expenses, and other clients are deprived of information relevant to assessing pending or anticipated settlement offers. The

2

- A list of tasks to be completed for each case, such as sending letters of representation and other correspondence to clients, communicating demands to opposing counsel, insurance companies and other third parties, requesting information from third parties, and obtaining settlement offers. (Ex. B at ¶ 3(i); Ex. C at ¶ 3(i).)

- The current status of each case. (Ex. B at ¶ 3(h); Ex. C at ¶ 3(h).)

The R&W Parties respectfully submit that all of the above data are part of the "client file" that must be transferred to R&W.

### THE NEEDLES DATA IS PART OF THE "CLIENT FILE"

In the District of Columbia, the "client file" consists of "all materials that the client or another attorney would reasonably need to take over the representation of the matter, material substantively related to the representation, and material reasonably necessary to protect or defend the client's interests." D.C. Bar Legal Ethics Comm., Formal Op. 333 (Dec. 2005). Accordingly, upon request by the client, an attorney must transfer "any document possessed by the lawyer relating to the representation, unless substantial grounds exist to refuse." *Id.* (*quoting* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 46(2) (2000)). The same rule holds for attorneys practicing in Virginia and Maryland.[2]

Indeed, the overwhelming majority of jurisdictions require an attorney to disclose the "entire client file."[3] For example, courts have held that the "client file" includes an attorney's

---

R&W Parties respectfully submit that SLF's claimed expenses for all of the R&W clients, not just those whose matters have settled, is part of the "client file" and must be transferred pursuant to this Court's prior orders and the ethical rules in the District of Columbia.

[2] *See* Va. Legal Ethics Op. 1366 (July 1990) (the client file includes "attorney's notes, internal memoranda and multiple drafts and other documents which lead to final documents or resulted in advice given as to a particular matter"); *Atty. Griev. Comm'n v. Edib*, 415 Md. 696, 716 (Md. 2010) (rejecting the argument that Md. RPC 1.16(d) "does not require a lawyer to give a copy of every relevant document, only documents that the client could show were needed to protect the client's rights or that would prejudice the client otherwise if the client was without them.").

[3] *See In re Grand Jury Proceedings*, 727 F.2d 941, 945 (10th Cir. 1984) (noting client ownership of files as general principle of law); *Resolution Trust Corp. v. H----, P.C.*, 128 F.R.D. 647, 649-50 (N.D. Tex. 1989)

3

"working papers, notes, and calculations" (*Iowa Sup. Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W. 2d 812, 819-20 (Iowa Sup. Ct. 2007)), and "internal legal memoranda, drafts of instruments, mark-ups, notes on contracts and transactions and ownership structure charts" as well as "firm correspondence with third parties and conference negotiation notes." *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP*, 91 N.Y.2d 30, 33 (N.Y. 1997).[4]

Moreover, the "client file" is determined without regard to the electronic medium in which it is contained. *See* Ariz. State Bar Comm. on the Rules of Prof'l Conduct, Formal Op. 08-02 (2007) (affirming client's right to files regardless of digitization); Cal. State Bar Standing Comm. on Prof'l Resp. and Conduct, Formal Op. 2007-174 (2007) (there is no "distinction based on the

---

(relying on fiduciary nature of attorney-client relationship to conclude files created in course of representation belong to client); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W. 2d 812, 819-20 (Iowa Sup. Ct. 2007) (adopting majority position entitling client to entire file); *Averill v. Cox*, 761 A.2d 1083 (N.H. 2000) (declining to distinguish between ownership interests based on end product and work product); *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn, L.L.P.*, 689 N.E.2d 879, 882 (N.Y. 1997) (concluding client access to files includes paid for work-product materials); *Maleski v. Corporate Life Ins. Co.*, 641 A.2d 1, 6 (Pa. Commw. Ct. 1994) (holding once client has paid for creation of document, client holds proprietary interest in it); *In re: Kaleidoscope, Inc.*, 15 B.R. 232 (Bankr. N.D. Ga. 1981), *rev'd on other grounds*, 25 B.R. 729 (N.D. Ga. 1982) ("an attorney . . . has no right or ability to unilaterally cull or strip from the files created or amassed during his representation of that client documents which he determines the client is not entitled to see."); *see also* Alaska Bar Ass'n Ethics Comm., Formal Op. 2003-3 (2003) (concluding attorney must presumptively give client access to entire file unless there exist substantial grounds to refuse); Ariz. Comm. on the Rules of Prof'l Conduct, Op. 08-02 (2008) (recognizing files belong to clients); Louisiana RPC 1.16(d) (lawyer must promptly release entire file upon written request from client); Me. Bd. of Overseers of the Bar Prof'l Ethics Comm'n., Op. 183 (2004) (opining that file is property of the client but declining to answer whether attorney has ownership of work product); Minn. Lawyers Prof'l Responsibility Bd., Op. 13 (1989); Neb. Ethics Advisory Opinion for Lawyers, Formal Op. 01-3 (2001) (identifying, as general rule, client is entitled to work product); Sup. Ct. of Ohio Bd. of Comm'rs on Grievances and Discipline, Informal Op. 92-8 (1992) (opining all materials acquired or prepared to represent client and materials beneficial to client belong to client); Or. State Bar Bd. of Governors, Formal Op. 2005-125 (2005) (defining client file to include work product); S.C. Bar Ass'n Ethics Advisory Comm., Op. 92-37 (1992) (concluding all material prepared in course of representation constitutes client file); Utah State Bar Ethics Advisory Opinion Comm., Formal Op., 06-04 (2006) (concluding client file includes all material not restricted by statute, discovery rule, or court order); Wash. State Bar Ass'n, Formal Op. 181 (1987) (concluding file generated in course of representation belongs to client).

[4] In Alabama, where Plaintiff and its counsel practice law, an attorney need only give the client the "end product" contained in the client file. *Sup. Ct. of Ala.*, Formal Op. 1986-02 (1984).

4

form of any item, whether electronic or non-electronic"); N.C. State Bar, Formal Op. 5 (2008) (lawyers may "store client files in an electronic format."); State Bar Assn of N.D. Ethics Comm., Op. 01-03 (2001) ("A client's file that is maintained in an electronic format should be provided in that same format if requested."); N.H. Bar Ass'n Ethics Comm., Op. 2005-06/3 (2006) ("the contents of a client's file would necessarily include both paper and electronic forms of communications"); State Bar of Wis. Prof'l Ethics Comm., Op. E-00-03 (same).

The R&W Parties respectfully submit that the Needles data listed above are part of the client files that SLF is required to transfer to R&W, pursuant to this Court's prior orders. Indeed, Roeser and Whitlock routinely stored client information in Needles, and it would be difficult for the R&W Parties to represent the clients who elected to retain R&W without receiving the Needles data from SLF. (*See* Ex. B at ¶¶ 4-5 and Ex. C at ¶¶ 4-5.)

SLF has no basis for withholding client files because it chose to store them in an electronic database. As legal ethics scholars Robert W. Hillman and Allison D. Rhodes explain with respect to such information, "… the data should be turned over with the client file in the most useful format. Proprietary software often manipulates data or populates useful information such as docketing rules. The cost of the software is overhead and part of what the client purchases when hiring the law firm, and any portable benefits derived from the software belong to the client as well." Robert W. Hillman and Allison D. Rhodes, *Client Files and Digital Law Practices: Rethinking Old Concepts in an Era of Lawyer Mobility*, 43 Suffolk U. L. Rev. 897, 917 (2010). Because the Needles data at issue is substantively related to the representation, regardless of the electronic medium in which it is stored, it should be transferred in a manner useful to R&W in order to protect and defend the clients' interests.

## CONCLUSION

For the foregoing reasons, the R&W Parties respectfully request that the Court issue an order requiring that SLF transfer to R&W, forthwith, the Needles data for those clients who have elected to retain R&W.

Respectfully submitted,

/s/ Robert A. Salerno
ADAM S. HOFFINGER (D.C. Bar No. 431711)
ROBERT A. SALERNO (D.C. Bar No. 430464)
JEREMY B. MERKELSON (D.C. Bar No. 997281)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, N.W., Suite 6000
Washington, D.C. 20006-1888
Telephone: 202.887.1525
Facsimile: 202.887.0763
ahoffinger@mofo.com
rsalerno@mofo.com
jmerkelson@mofo.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 19, 2011, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record, including Plaintiff's counsel listed below:

>Rodney R. Sweetland, III, Esq.
>Brandon M. Jordan, Esq.
>McKool Smith, P.C.
>1999 K Street, N.W.
>Suite 600
>Washington, D.C. 20006
>Tel: (202) 370-8300
>Fax: (202) 370-8344
>rsweetland@mckoolsmith.com
>bjordan@mckoolsmith.com
>
>Scott M. Speagle, Esq. (Appearing Pro Hac Vice)
>WEBSTER, HENRY, LYONS, WHITE
>BRADWELL, & BLACK, P.C.
>Post Office Box 239
>Montgomery, Alabama 36101-0116
>Telephone:(334) 264-9472
>Facsimile: (334) 264 9599
>scott@websterhenry.com

/s/
Robert A. Salerno

# EXHIBIT A

Case 1:11-cv-01806-EGS   Document 19   Filed 12/19/11   Page 8 of 20

**MORRISON | FOERSTER**

2000 PENNSYLVANIA AVE., NW
WASHINGTON, D.C.
20006-1888

TELEPHONE: 202.887.1500
FACSIMILE: 202.887.0763

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

November 28, 2011

Writer's Direct Contact
202.887.6930
RSalerno@mofo.com

**Via Email**

Rodney R. Sweetland, III
Brandon Jordan
McKool Smith
1999 K Street NW
Suite 600
Washington, D.C. 20006-1101

Re: *Slocumb Law Firm v. Roeser, et al.*, Case No. 1:11-cv-01806-EGS (D.D.C.)

Dear Rodney and Brandon:

During the status conference held on November 10, 2011, the Court asked that Roeser & Whitlock ("R&W") provide a final list of "missing" client files – i.e., client files that Slocumb Law Firm ("SLF") has not yet transferred to R&W.

R&W has reviewed the materials transferred to date, including the electronic data contained on the two flash drives handed to us in the courthouse, and discovered that *none* of the relevant electronic data from the Needles Case Management Software Database ("Needles data") has been provided.

The Needles database used by SLF includes, but is not limited to, information organized under the following tabs:

- "Case" Tab – This includes a description of accident, the location of accident, the injuries sustained, and Medicare information;

- "Party" Tab – This includes client contact information such as address, phone number, date of birth, and social security number.

- "Insurance" Tab – This includes insurance company and adjuster contact information. There are generally two separate inputs under this tab: one for liability insurance and another for PIP insurance.

MORRISON | FOERSTER

Brandon Jordan
November 28, 2011
Page Two

- "Notes" Tab – This includes records of communications with clients and others within SLF regarding the case, as well as case tasks and other case notes.

- "Records" tab – This includes a list of the medical providers who clients have consulted due to the injuries they sustained.

- "Values" tab – This includes all costs associated with the case, such as medical records, investigator costs, and other miscellaneous items.

All of the above information constitutes "client files." Pursuant to the prior court orders, such information should have been transferred to R&W for each and every client who has provided a written election that he or she wishes to retain R&W. Please confirm that SLF will transfer this Needles data, and let us know when this week we can retrieve it.

Sincerely,

/s/

Robert A. Salerno

2

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SLOCUMB LAW FIRM, LLC,<br><br>                      Plaintiff,<br><br>v.<br><br>ZEKE ROESER, ET AL.,<br><br>                      Defendants. | Civil Action No. 1:11-cv-01806-EGS<br><br>ECF CASE |

**DECLARATION OF ZEKE ROESER**

1.    I am named as a Defendant in the above-captioned civil action. I am over the age of 18 years and have personal knowledge of the matters set forth in this declaration.

2.    I practiced law as an associate with the Slocumb Law Firm, LLC ("SLF") in the Washington, D.C. office from June 2009 until I resigned on or about October 7, 2011. Based on my experiences working for SLF, I am familiar with the Needles Case Management Software Database ("Needles") used by SLF.

3.    Needles was used by SLF as a storage medium for information relating to all of the client matters handled by SLF, including all of the client matters on which I worked while I was an SLF associate. The data stored in Needles was divided into various categories or electronic "tabs" including but not limited to:

    a. Under the "Party" tab in Needles, SLF typically stores information about all parties involved in a claim, usually injured parties and at-fault parties. This tab includes the names, dates of birth, social security numbers, addresses, telephone numbers, email addresses, role in the case, marital status, employers, and other pertinent information relating to the parties involved in a claim.

1

b. Under the "Case" tab in Needles, SLF typically stores essential information about each accident, including the date of accident, date of the opening of the file, date of case intake, staff responsible for the handling of the file, a synopsis of the accident, location of the accident, type of accident, caption of the case if in litigation, the date that the injured parties reached Maximum Medical Improvement, the date a demand was sent, the date a suit was filed, and all other relevant litigation deadlines.

c. Under the "Notes" tab in Needles, SLF typically stores every note and mental impression of the responsible attorney and paralegals on a given case. This includes notations of all communications between SLF and clients, insurance adjusters, opposing counsel, police officers, as well as information on substantive developments in the case. A typical note might read, "I just spoke with the liability adjuster and they are denying liability on the grounds of contributory negligence. We will need to file suit."

d. Under the "Insurance" tab in Needles, SLF typically stores contact information for all insurance companies and adjusters involved in each case, including the company name, address, adjuster, telephone number, fax number, whether the company has accepted liability, the type of insurance coverage, policy number, claim number, name of the insured, and available policy limits.

e. Under the "Viewer" tab in Needles, SLF typically links each client matter to an electronic client file with important documents, such as correspondence, scanned records, photographs of accidents, and other data.

    f. Under the "Police" tab in Needles, SLF typically stores information on any police department involved with each case, and police report information if applicable.

    g. Under the "Value" tab in Needles, SLF typically stores all law firm expenses associated with a given case, including costs expended on ordering medical records and bills, police reports, payments for process service, filing fees, travel expenses, copying, and postage. This is also where final settlement figures and attorney's fees are listed.

    h. Under the "Status" tab in Needles, SLF typically stores information on the current status of each case.

    i. Under the "Checklist" tab in Needles, SLF typically stores a list of tasks that must be completed for each case, with indications about whether the tasks have been completed. Tasks may include: sending letters of representation and other correspondence to clients; communicating demands to opposing counsel, insurance companies and other third parties; requesting information from third parties; and obtaining settlement offers.

4. Because of its comprehensive nature, I typically did not store client matter in electronic form outside of Needles. And, in most cases, paper files relating to client matters were scanned into and made accessible through Needles. Most of my notes and mental impressions relating to client matters were stored in Needles.

5. The Needles data contains information without which it would be difficult for R&W to represent former SLF clients who have elected to retain R&W.

3

I declare under penalty of perjury that the foregoing is true and correct.

Date: December 19, 2011

Zeke Roeser

4

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SLOCUMB LAW FIRM, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>ZEKE ROESER, ET AL.,<br><br>        Defendants. | Civil Action No. 1:11-cv-01806-EGS<br><br>ECF CASE |

## DECLARATION OF MORGAN WHITLOCK

1. I am named as a Defendant in the above-captioned civil action. I am over the age of 18 years and have personal knowledge of the matters set forth in this declaration.

2. I practiced law as an associate with the Slocumb Law Firm, LLC ("SLF") in the Washington, D.C. office from November 2010 until I resigned on or about October 7, 2011. Based on my experiences working for SLF, I am familiar with the Needles Case Management Software Database ("Needles") used by SLF.

3. Needles was used by SLF as a storage medium for information relating to all of the client matters handled by SLF, including all of the client matters on which I worked while I was an SLF associate. The data stored in Needles was divided into various categories or electronic "tabs" including but not limited to:

    a. Under the "Party" tab in Needles, SLF typically stores information about all parties involved in a claim, usually injured parties and at-fault parties. This tab includes the names, dates of birth, social security numbers, addresses, telephone numbers, email addresses, role in the case, marital status, employers, and other pertinent information relating to the parties involved in a claim.

1

b. Under the "Case" tab in Needles, SLF typically stores essential information about each accident, including the date of accident, date of the opening of the file, date of case intake, staff responsible for the handling of the file, a synopsis of the accident, location of the accident, type of accident, caption of the case if in litigation, the date that the injured parties reached Maximum Medical Improvement, the date a demand was sent, the date a suit was filed, and all other relevant litigation deadlines.

c. Under the "Notes" tab in Needles, SLF typically stores every note and mental impression of the responsible attorney and paralegals on a given case. This includes notations of all communications between SLF and clients, insurance adjusters, opposing counsel, police officers, as well as information on substantive developments in the case. A typical note might read, "I just spoke with the liability adjuster and they are denying liability on the grounds of contributory negligence. We will need to file suit."

d. Under the "Insurance" tab in Needles, SLF typically stores contact information for all insurance companies and adjusters involved in each case, including the company name, address, adjuster, telephone number, fax number, whether the company has accepted liability, the type of insurance coverage, policy number, claim number, name of the insured, and available policy limits.

e. Under the "Viewer" tab in Needles, SLF typically links each client matter to an electronic client file with important documents, such as correspondence, scanned records, photographs of accidents, and other data.

    f. Under the "Police" tab in Needles, SLF typically stores information on any police department involved with each case, and police report information if applicable.

    g. Under the "Value" tab in Needles, SLF typically stores all law firm expenses associated with a given case, including costs expended on ordering medical records and bills, police reports, payments for process service, filing fees, travel expenses, copying, and postage. This is also where final settlement figures and attorney's fees are listed.

    h. Under the "Status" tab in Needles, SLF typically stores information on the current status of each case.

    i. Under the "Checklist" tab in Needles, SLF typically stores a list of tasks that must be completed for each case, with indications about whether the tasks have been completed. Tasks may include: sending letters of representation and other correspondence to clients; communicating demands to opposing counsel, insurance companies and other third parties; requesting information from third parties; and obtaining settlement offers.

4. Because of its comprehensive nature, I typically did not store client matter in electronic form outside of Needles. And, in most cases, paper files relating to client matters were scanned into and made accessible through Needles. Most of my notes and mental impressions relating to client matters were stored in Needles.

5. The Needles data contains information without which it would be difficult for R&W to represent former SLF clients who have elected to retain R&W.

I declare under penalty of perjury that the foregoing is true and correct.

Date: December 19, 2011

_____
Morgan Whitlock

4