```
 1              UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
 2    --------------------------X
      SLOCUMB LAW FIRM,              Docket No. CA 11-1806
 3                   Plaintiff,

 4          v.                       Washington, D.C.
                                     November 4, 2011
 5                                   12:10 p.m.

 6    ZEKE ROESER, ET AL,
                     Defendant.
 7    --------------------------X

 8                         STATUS HEARING
            BEFORE THE HONORABLE EMMET G. SULLIVAN
 9              UNITED STATES DISTRICT JUDGE
                             and
10        BEFORE THE HONORABLE JOHN M. FACCIOLA
                UNITED STATES MAGISTRATE JUDGE
11    APPEARANCES:
      For the Plaintiff:    McKOOL SMITH, P.C.
12                          By:  Mr. Rodney Sweetland, III
                                 Mr. Brandon M. Jordan
13                          1999 K Street, N.W.
                            Suite 600
14                          Washington, D.C.  20006
                            202.370.8366
15                          rsweetland@mckoolsmith.com
                            bjordan@mckoolsmith.com
16
      For the Defendant:    MORRISON & FOERSTER, LLP
17                          By:  Mr. Robert A. Salerno
                                 Mr. Jeremy Ben Merkelson
18                          2000 Pennsylvania Avenue, N.W.
                            Suite 6000
19                          Washington, D.C.  20006
                            202.887.6930
20                          rsalerno@mofo.com
                            jmerkelson@mofo.com
21
      Court Reporter:       Catalina Kerr, RPR, CRR
22                          U.S. District Courthouse
                            Room 6509
23                          Washington, D.C.  20001
                            202.354.3258
24                          catykerr@msn.com

25    Proceedings recorded by mechanical stenography, transcript
      produced by computer.
```

1                    P-R-O-C-E-E-D-I-N-G-S

2           (12:10 P.M.; OPEN COURT.)

3           THE DEPUTY CLERK:  Civil Action 11-1806, Slocumb Law

4    Firm versus Zeke Roeser, et al.  Counsel, please come forward

5    and identify yourselves for the record.

6           MR. SWEETLAND:  Rodney Sweetland of McKool Smith for

7    the Plaintiff and my colleague Brandon Jordan.

8           MR. SALERNO:  Good afternoon.  Robert Salerno on

9    behalf of the Defendants, and with me is my colleague Jeremy

10   Merkelson.

11          THE COURT:  All right.  Let me just say that without

12   revealing any confidential information that a side may have

13   given Judge Facciola in settlement -- in attempted settlement

14   discussions, he thought that there were issues serious enough

15   to immediately bring to my attention.  I actually was not in

16   the jurisdiction.

17          He brought to my attention these matters and I

18   agreed with him that there was a need for us to bring counsel

19   in because the very important serious issues that are probably

20   and arguably more important than the legal controversy that is

21   before the Court has to do with clients, regardless who claims

22   to be the attorney representing the clients, about clients,

23   their interest, pending litigation, whether or not there are

24   settlement sums that are awaiting receipt and disbursement to

25   clients, and that's a very sensitive issue, and that's an

1    issue that warrants our discussion today.

2            So, he hasn't revealed any confidential information,

3    but he's aware that there are serious disputes about claims

4    and about clients, and because those serious disputes about

5    clients and receivable sums may well impact a client's

6    interest, then he suggested, and I agreed, that we should

7    bring counsel in.

8            So, I'm not going to say anymore at this point.  I

9    want counsel to hear from Judge Facciola.

10            Judge.

11            JUDGE FACCIOLA:  Good morning everyone.  May it

12    please the Court.

13            The settlement discussion before me began with the

14    words that what goes on in this room stays in this room.  That

15    binds me as well as anyone else, but it is not my intention in

16    any way to speak of any offers or discussions that we did in

17    the exchange of potential ways to settle this suit.  To the

18    contrary, unless someone has an objection, I simply want to

19    outline, as I did in my report, the three areas that in my

20    view require immediate attention so that the interest of third

21    parties, the clients, are immediately attended to, so that in

22    any way their situation is not placed in peril or their rights

23    or interests prejudiced.

24            So, with that understanding, unless I hear

25    objection, I will say, as I said in my report, where I think

1   the three most significant problems are, Your Honor.  Any

2   objection?

3            MR. SWEETLAND:  No, Your Honor.

4            MR. SALERNO:  No objection.

5            JUDGE FACCIOLA:  All right.  No. 1 are the files,

6   Your Honor.  The files consist not only of the files generated

7   by counsel and the materials made available to counsel by a

8   client but medical records that have been generated.

9            In my presence, during the settlement discussions,

10   Your Honor, Mr. Slocumb handed to Mr. Roeser a thumb drive

11   which he represented contained the medical records of the

12   clients who now, at least purportedly, are represented by

13   Roeser & Whitlock.  He also represented that there would be a

14   complete turnover of the files; however, counsel for

15   Mr. Slocumb indicated that that has become a bit of a, as he

16   put it, a moving target.

17            So, I think the first urgent concern we have is a

18   list of who is being represented by whom at this point, where

19   the files are pertaining to each of those people are.  That

20   seems, to me, is a matter of great urgency because obviously

21   one cannot talk to insurance carriers or lawyers for the other

22   side without the most fundamental information.

23            The second issue, which in my view requires

24   immediate attention, is money.  It was represented to me, I'm

25   sure counsel will confirm this, that on a daily basis monies

1   come in from third parties, insurance carriers, perhaps law

2   firms who represent defendants or whatever, and when that

3   money comes in, it is therefore subject to a disputed claim

4   with the parties before Your Honor with reference to whose

5   money that is.

6           As recently, I think, as this week, a 40,000-dollar

7   check came in for a family called the "Gray" family, someone

8   here in the District of Columbia.  I'm concerned about that,

9   Your Honor, because these are not wealthy people.  I don't

10  know if they've taken out loans or whatever or -- to keep the

11  lawsuits going.  But in any event, Your Honor, suddenly we

12  have this situation where money is coming in that belongs to

13  third parties subject to liens by both, either one or the

14  other side.

15          And the third aspect of it is continued

16  communications with the clients, whosoever clients they may be,

17  that is, even though the Roeser firm has secured, it is

18  represented to me and to Your Honor, letters of termination

19  terminating the Slocumb firm and permitting Roeser & Whitlock

20  to undertake the representation under whatever fee

21  arrangements are made, Mr. Slocumb takes the view that he

22  still may communicate with those people, and as a result,

23  there seems to me, from my perspective, Your Honor, as a

24  judge, the potential for at least great confusion among these

25  people at a central period of time.

1        For example, if a settlement offer is made by an

2   insurance carrier to settle their matter and they, confused by

3   the situation, call Mr. Slocumb, what is Mr. Slocumb permitted

4   to say?  On the other hand, what are Mr. Roeser and Ms.

5   Whitlock permitted to say?

6        So those are the three items, I believe, that

7   require immediate attention, Your Honor, because in the next

8   few days the interest of those people could be jeopardized.

9        THE COURT:  And the interest of clients, clients'

10   interests.

11        JUDGE FACCIOLA:  Indeed.

12        THE COURT:  Client's interest.  And the record's

13   clear that the motion was filed to appoint a master.  You call

14   it a master, receiver, some sort of -- some third party who

15   could step in with principal authority to address the concerns

16   of the clients because the clients -- I don't want to say they

17   are not represented.  That's the problem.  That's the reason

18   why this lawsuit is here, but there may be other issues that

19   impact the clients' rights that query whether they're being

20   addressed at this point.

21        Is there objection by the Defendants to the

22   appointment of a master?  I know this was just filed last

23   evening.  I'm interested in your preliminary thoughts.

24        MR. SALERNO:  Good afternoon.  We have no objection

25   to the appointment of -- notwithstanding what it says in the

1   papers, we have no objection to the appointment of a master or

2   Magistrate Facciola if he would be able and willing to do it.

3          THE COURT:  Well, I think he would be eminently well

4   qualified to serve in that role, whatever that role is, and I

5   appreciate that, and I think that that's certainly consistent

6   with the fair administration of justice that someone of his

7   caliber or someone else be -- step in with responsibility to

8   contact insurance companies, to contact clients, to make sure

9   that regardless of the legal controversy, that the rights of

10  innocent parties aren't impacted adversely.

11         So, call it a master, receiver, I think the

12  nomenclature is irrelevant.  What's more important is, what

13  would Judge Facciola do?  What would his responsibilities

14  entail?  I mean, and that's a major agreement here that both

15  sides think there's a need for an independent to step in and

16  do something on behalf of innocent clients whose -- who we're

17  concerned about.  Obviously we wouldn't be here.

18         Now the heavy lifting starts.  What are his jobs --

19  let's assume he wants this responsibility, first of all, and I

20  I'm putting him on the spot now, and we can take a recess and

21  talk about it.  But let's assume, hypothetically, that he

22  wants that responsibility.  What is that responsibility?

23         MR. SALERNO:  I would suggest that the first order

24  of business would be to collect the election forms and -- the

25  election forms, and from that, it should be --

```
1              THE COURT:  The election forms.

2              MR. SALERNO:  That come back from clients.  If you

3    recall --

4              THE COURT:  We're going back two weeks ago.  All

5    right.  So there has been a process in place then, since the

6    last hearing.  All right.  All right.  Go ahead.

7              MR. SALERNO:  The clients were given a form to elect

8    either they would either stay with the Slocumb Law Firm, that

9    they would be represented by Roeser & Whitlock, and they were

10   told that they were free to choose.

11             THE COURT:  Refresh my recollection.  We're talking

12   about a finite number of cases that left with the individual

13   attorneys, correct, 387 or so, or fewer than that?

14             MR. SALERNO:  No.  There was a number that had been

15   contacted and there was a number, which does change daily,

16   that have elected to be represented by Roeser & Whitlock, and

17   as of today that number is 146.

18             JUDGE FACCIOLA:  That's where I got the number.

19             THE COURT:  That's the number you have, Judge.

20             JUDGE FACCIOLA:  Yeah.

21             THE COURT:  So there's no disagreement about that

22   then.

23             MR. SALERNO:  That's right.

24             THE COURT:  They made affirmative declarations that

25   they want the new entity, the new firm to represent those
```

```
1    clients.

2              MR. SALERNO:  Yes.

3              THE COURT:  And I see Plaintiffs' counsel --

4              MR. SWEETLAND:  We disagree with the number.  I

5    don't have any reason to believe, for the record, that any

6    counsel here is misrepresenting numbers.  I know that my

7    client gives me numbers and gives me spreadsheets.  I assume

8    that the same happens for Mr. Salerno.  I think one of the

9    reasons that we need a special master is to -- and one of the

10   reasons why we suggested, which I know Judge Facciola doesn't

11   want to do a physical inspection, because we have a real

12   concern.

13             Our numbers don't jive with that, and I don't know

14   why that is.  I don't know who's recordkeeping is superior.  I

15   don't know if that's what the issue is.  I don't know if there

16   are new election forms that have been come in since we made

17   the compilations that are not reflected in our data, but we --

18   we don't concur with that number.  We do agree that this is --

19   this changes every day as --

20             THE COURT:  That's certainly a compelling need to

21   have the services in that fiduciary capacity just to determine

22   who has principal responsibility now for servicing the claim

23   of the client who may be confused.

24             MR. SWEETLAND:  Right.

25             THE COURT:  So that's a compelling reason.
```

1    MR. SWEETLAND:  And if we could -- I know -- I

2    hate -- we asked for a special master, frankly, as opposed to

3    asking for being referred to Judge Facciola because we were

4    concerned that some of the tasks would be, you know, beneath

5    what a judge --

6        JUDGE FACCIOLA:  My magstignity.  A shame my wife

7    doesn't feel that way.

8        MR. SWEETLAND:  Yeah, well, some of these tasks are

9    so pedantic that they might lend themselves more to --

10        JUDGE FACCIOLA:  You might be able to resolve that

11    by getting some clerical assistance, extra clerical

12    assistance, an intern or somebody like that and having

13    counsel, the parties pay for that, I don't know.

14        MR. SWEETLAND:  That was just the thought process

15    why we didn't ask for it.  We'd be happy to have Judge

16    Facciola be the one, but we just didn't want to demean the

17    bench by saying we need a -- we'd like a judge to sort through

18    files.  I know what I hear when I ask a judge to look through

19    500 privilege documents for privilege review, so I --

20        THE COURT:  You know, there are times when we have

21    to do it, though, we have to do it, but I agree with you.

22    There would be a need for administrative assistance and that

23    cost would have to be borne by the parties.

24        MR. SWEETLAND:  We absolutely -- we will absolutely

25    take, Your Honor, our half of the costs.  And with respect to

1   the scope of Judge Facciola's or the special master's

2   authority, in some respects, I'm not going to say plenary

3   because I know that that -- that's too broad a term, but there

4   are a lot of issues here that I don't think that we can even

5   -- I think there are unpredictable events that are going to

6   happen that with all of us, even here in this courtroom, that

7   we can't predict on a day-to-day basis, and somebody

8   empower -- to be empowered on a Friday night when somebody's

9   gotten a -- an offer or there's some important --

10          THE COURT:  Absolutely.  We were just talking about

11   that walking down here.  I mean, there are cases -- and we can

12   segregate out the case.  There are cases that may have

13   arguably settled.  There's a sum of money.  There may be

14   competing liens or there may be a quantum meruit claim for

15   that sum of money that an attorney believes represents a fair

16   and reasonable settlement.  There may be cases where no demand

17   has been made whatsoever.

18          There's a difference with respect to valuation of a

19   claim, who makes the claim, are there statute of limitations

20   issues.  I mean, there are a ton of issues that we can sit

21   here for the next two or three hours and identify.

22          MR. SWEETLAND:  Which is why we would suggest, Your

23   Honor, is a broader delegation of authority so that we have

24   the ability.  There's flexibility going forward.  There's no

25   question of what, you know, of what the authority is, with the

1  exception of, you know, retaining the Slocumb Law Firm's lien,

2  I mean, in the --

3          THE COURT:  If indeed there is a lien.  That may --

4  that may be a legal issue that has to be determined.

5          MR. SWEETLAND:  That's true, Your Honor.

6          THE COURT:  Query whether there's a lien or whether

7  there's a basis for a quantum meruit compensation, I don't

8  know.

9          MR. SWEETLAND:  That's right, Your Honor.

10          THE COURT:  And I'm going to get to that, the legal

11  issues that are driving this case as well, as distinguished

12  from the issues that impact the clients who aren't really

13  represented -- well, they're represented, obviously, but their

14  fiduciary interest may well be in jeopardy at this point.

15          MR. SWEETLAND:  I don't think there's any dispute

16  between the parties that at least with respect to two-thirds

17  of any settlement, that money needs to go out to the clients

18  as soon as it comes in, and then we can argue -- we can put

19  the rest in escrow and we can argue among ourselves within the

20  context of this process or the special master or Judge

21  Facciola can make, you know, make reports and recommendations

22  on those issues.

23          But again, I would suggest, Your Honor, is that this

24  be a broad random authority.

25          THE COURT:  Well, it may -- and it may well be that

we're on the same page with respect to a special master that

essentially mirrors the role for the appointment of a master

without defining his role at this point.

In other words, the rules talk about a master being

able to step in to perform the multitude of tasks that a judge

is not capable of doing, and I would not be capable of

stepping in and servicing these clients, so it may well be a

master that mirrors the role and with further duties and

responsibilities to be defined -- recommended by the parties

and to be defined by the Court and also recommended by the

master.

I think I -- I don't think there's any disagreement

about that, the judge, slash, master should have full

authority at this point, whatever that authority is, and not

inconsistent with the rules that are in place for the

appointment of special masters.  Does that -- does that -- how

does that --

JUDGE FACCIOLA:  I think so.  I think it's got to be

brought because, as you say, we can't possibly anticipate

everything that's going to happen.

THE COURT:  You go to Facciola and say --

JUDGE FACCIOLA:  An offer is made, the client

changes his mind and then, you know, he doesn't want the offer

and he makes noises about getting a lawyer, and blah, blah,

blah.  You know, it's impossible to anticipate everything that

```
1    could occur.

2              THE COURT:  Right.  But what about that?  The master

3    issue may well be on its way to resolution, that is, putting

4    in place a special master, but the underlying legal issues are

5    driving this lawsuit and I inquired as to whether or not the

6    process has been served.

7              Has service of process been effected, been

8    completed, or is that -- is that an issue?

9              MR. SALERNO:  No, it's not an issue.  It's been

10   effected.

11             THE COURT:  How do we get to the underlying legal

12   issues here because the underlying legal issues have to be

13   addressed and it should be addressed in a timely matter.

14   Those underlying legal issues are intertwined obviously with

15   the clients, but there are certain preliminary issues that

16   have to be addressed.

17             Did the attorneys have the authority to do what they

18   did?  That's the principal issue here, and if they did, you

19   know, then that's going to impact what the master does.

20             MR. SWEETLAND:  Possibly, Your Honor, a scheduling

21   order with a date.  I don't know if the Defendants are going

22   to be filing a dispositive motion in lieu of an answer.

23             THE COURT:  I don't know whether there's a need for

24   discovery.  I'm just throwing all this out there because I

25   don't want to get too far down the field here, and we haven't
```

 1    focused on the legal issues that bring you folks to court.

 2              MR. SWEETLAND:  We would like the case two tracks

 3    going on; one track that deals with the clients' problems.

 4              THE COURT:  I would like it on one track, one track

 5    leading to settlement.

 6              (LAUGHTER.)

 7              THE COURT:  And let you folks get on with your

 8    business, with your livelihoods, you know.

 9              MR. SWEETLAND:  But clearly, I think, on behalf of

10    my client, that settlement would be furthered if we can

11    further explore the issues in the underlying case separately

12    and apart from the difficulties in the file transfers and

13    these administrative tasks that are essential for the clients'

14    interests and let the parties duke it out in here.  So we

15    would just ask that Your Honor to just conventionally set a

16    scheduling conference, we'll get their answer that could have

17    a dispositive motion.

18              THE COURT:  Then maybe what the Court should do in

19    addition to appointing Magistrate Judge Facciola as special

20    master, assuming he wants that responsibility, is to direct

21    the filing of the Rule 16 initial scheduling conference

22    pleading that addresses all of these issues, sooner than

23    later, filed sooner than later.  Responsive pleading has not

24    been filed, correct?

25              MR. SALERNO:  That's correct, Your Honor.

```
 1           THE COURT:  Direct the filing of a responsive
 2  pleading.  Normally I would have your meet-and-confer reports,
 3  and maybe I should have the benefit of that as opposed to
 4  sitting here now parsing through that.  I mean, that's one
 5  alternative, do it now.  It seems to me that I should not do
 6  that.  I should have your best thoughts because you're going
 7  to have to sit down and talk about these issues.  That's the
 8  benefit of the meet-and-confer report, the judge has the input
 9  from both sides.
10           So, what makes sense?  Your Rule 16 report by
11  Monday?  Does that make sense, your meet-and-confer?  Give me
12  a little more time to do that.  I want your best thoughts
13  available.  What makes sense under the circumstances?  I mean,
14  talk about responsive pleadings, talk about the need for
15  discovery, talk about the propriety of filing cross motions
16  for potentially dispositive relief, or not.
17           MR. SWEETLAND:  Plaintiffs can certainly meet that
18  deadline, Your Honor.
19           THE COURT:  What's reasonable and realistic under
20  the circumstances?  There's a ton of work that has to be done.
21  What do you think?
22           JUDGE FACCIOLA:  I'm thinking Wednesday or Thursday.
23           THE COURT:  Wednesday or Thursday of next week?
24           MR. SALERNO:  We can meet whatever --
25           THE COURT:  Wednesday at noon, your meet-and-confer
```

```
1    report, all right.

2                 MR. SALERNO:  We can meet whatever schedule.  My --

3    I would like to raise a related issue --

4                 THE COURT:  Yeah, sure.  Go ahead.

5                 MR. SALERNO:  -- that deals with the -- I assume

6    with respect to the money coming in, there will be some sort

7    of escrow mechanism.

8                 JUDGE FACCIOLA:  Who are those checks made payable

9    to now?

10                THE COURT:  Just "the client" or "the client and"?

11                JUDGE FACCIOLA:  Client and somebody?

12                MR. SALERNO:  What's been happening is that for a

13   Roeser & Whitlock client, the -- Mr. Slocumb has been

14   contacting the insurance companies and saying that do not

15   issue a check to Roeser & Whitlock.  Please put --

16                THE COURT:  The master is going to have some

17   authority about --

18                MR. SWEETLAND:  We object to that, Judge.

19                THE COURT:  You've raised it.  The master is going

20   to have the authority to determine who contacts clients, who

21   contacts the insurance company.

22                JUDGE FACCIOLA:  Or the master may contact them.

23                THE COURT:  That's right.  Exactly.

24                JUDGE FACCIOLA:  And then --

25                THE COURT:  Absolutely.
```

1          JUDGE FACCIOLA:  Judge.

2          THE COURT:  Go ahead.

3          JUDGE FACCIOLA:  No, I was just pointing out that

4   Jennifer had a question.

5          THE COURT:  Go ahead.

6          JUDGE FACCIOLA:  No, that's something I want to give

7   some thought to.

8          MR. SALERNO:  That would be great.  The issue I was

9   getting to is, you know, if there's to be an escrow -- and the

10  concern is that, you know, it's been Plaintiffs' repeated

11  position that any amount put in escrow other than the amounts

12  to be issued -- to be released to the clients, the two-thirds

13  to be released to the clients should be held up for the

14  duration of this litigation, regardless of the amount to which

15  Mr. Slocumb would be entitled, and our position is that that

16  is a quantum meruit and that whatever escrow is kept for the

17  duration of the litigation should be something that

18  approximates what is quantum meruit for the Slocumb Law Firm.

19  If not, the result would be essentially the destruction of

20  Roeser & Whitlock.

21         JUDGE FACCIOLA:  I think the answer to that, if His

22  Honor agrees, of course, is that's one of the things we want

23  you to talk about in the meet-and-confer, is a mechanism for

24  that.  If you can't agree, so be it, but the special master,

25  whoever it is, it's me or someone else, may have to tee up --

1      THE COURT:  I think it's going to be you at this

2  point, Judge, unless you don't want that.

3      JUDGE FACCIOLA:  No.  Did you ever see the play "A

4  Funny Thing Happened on the Way to the Farm"?  One of the

5  characters marries a very shrewish wife and she keeps

6  bothering him and at one point he has a line which I've always

7  loved.  He says to no one in particular, "Never marry during a

8  total eclipse," so you got to see what the lay of the land is

9  so at least give me a night to sleep on it.

10      (LAUGHTER.)

11      THE COURT:  All right.

12      JUDGE FACCIOLA:  I'm leaning in that direction, but

13  my point is this.  The special master is not simply an

14  administrative official.  There are going to be a motions

15  hearing, so you and I are going to have to work out a

16  mechanism where I give you rulings subject to your review,

17  immediate review as we've done in the other matter with which

18  we've been having so much fun, but I'm ready to do that and

19  then confront that issue because I don't believe either Judge

20  Sullivan or I have any desire to -- it would surely throw the

21  baby out with the bath water to destroy both of these firms

22  economically in the hopes of saving them, you know.

23      So that's -- but I appreciate your point, and it's a

24  very good point to be made, but I would appreciate your

25  meet-and-confer, you discuss specifically how that legal issue

1    will be addressed.

2           THE COURT:  Let me ask you to --

3           JUDGE FACCIOLA:  What are the legal considerations

4    that pertain to what the escrow amounts should be.

5           THE COURT:  Let me ask you to weigh in, as well as

6    the parties.  I said the meet-and-confer by Wednesday but

7    normally we would wait till the filing of a responsive

8    pleading.  Under the rules, how much time do you have to file

9    your pleading?

10          JUDGE FACCIOLA:  Yeah.  I don't think we can hold it

11   without 26(f), can you?

12          THE COURT:  Yeah, right.

13          MR. SALERNO:  Based on the agreed date of service,

14   we have 21 days, which would be this coming Wednesday.

15          THE COURT:  Then query whether I should wait and see

16   what you file on Wednesday before taking further action with

17   respect to meet-and-confer.

18          MR. SALERNO:  I can foreshadow what we're going to

19   be filing.

20          THE COURT:  Sure.

21          MR. SALERNO:  They will contain allegations of

22   alleged wrongful conduct by the Slocumb Law Firm since the

23   date that Roeser & Whitlock left.  I think it probably would

24   not -- we would not be hindered if we were to start the

25   process before you receive those pleadings.

1          MR. SWEETLAND:  My only question would be, if I may,

2    Your Honor, is do we anticipate a dispositive motion on

3    Wednesday, and that would affect, I think, things much more

4    dramatically than a --

5          THE COURT:  Potentially dispositive motion.

6          MR. SALERNO:  A final decision has not been made on

7    that but probably not.

8          THE COURT:  That probably makes eminently good sense

9    as well, right?

10          MR. SALERNO:  And you know, another --

11          THE COURT:  So you anticipate the filing of an

12    answer then.

13          MR. SALERNO:  I don't want to -- without -- I don't

14    want to get too far ahead of my clients, but we will likely

15    file an answer and a counterclaim.

16          THE COURT:  All right.

17          MR. SALERNO:  And in fact, Your Honor, since it may

18    not -- may not have that much impact on the responsibilities

19    of the special master, we may want to put that, even put that

20    off while we grapple with, you know, the client transfer

21    issues and the escrow issues.

22          THE COURT:  All right.  So that would trigger an

23    answer and counterclaim.  All right, that's fine, and that

24    will trigger the Court issuing its fiduciary notices then for

25    the filing of probably a meet-and-confer report.  I mean, we

1    can meet again, Judge, on Monday or give you -- today is

2    Friday -- give you some time to think about it.

3              JUDGE FACCIOLA:  Yes, I'm on trial on Monday but

4    we'll work something out, either during the luncheon recess or

5    in the evening.  I just want to give it some thought.

6              THE COURT:  No, no, that's -- I don't want to --

7    it's very easy for me to say, "You want this Judge Facciola,

8    you really want this responsibility.  Don't you really want

9    it?"

10             JUDGE FACCIOLA:  What I said about the character,

11   got married in a total eclipse, but okay.

12             THE COURT:  Should we bring them back early next

13   week?

14             JUDGE FACCIOLA:  Well, it will probably be without

15   me because I'll be on trial.  But if you wanted to, as I say,

16   if you could make it during the luncheon recess on Wednesday

17   or Thursday, that will be fine.  We could work it out.  My

18   trial may go more quickly than anticipated.

19             THE COURT:  Maybe Thursday since you're going to

20   file your pleading on Wednesday.

21             JUDGE FACCIOLA:  Why don't we set something

22   tentatively for Thursday.  I'll, in the meanwhile, give this a

23   little more thought.

24             THE COURT:  All right.  Do you know your calendar

25   for Thursday right now?

1          JUDGE FACCIOLA:  Well, right now I'm on trial.

2          THE COURT:  So you don't want to spend your lunch

3    hour here.

4          JUDGE FACCIOLA:  I don't know.  If I have to I have

5    to.

6          THE COURT:  All right.

7          MR. SALERNO:  Your Honor, we currently have three

8    checks in our possession made out in the names of the client,

9    Roeser & Whitlock and the Slocumb Law Firm.

10          JUDGE FACCIOLA:  What's the --

11          THE COURT:  Figured that.

12          JUDGE FACCIOLA:  What's the total amount of those

13    checks, Counsel?

14          MR. SALERNO:  Approximately 37,000.

15          JUDGE FACCIOLA:  Is that to the Gray family?

16          MR. ROESER:  It does.

17          JUDGE FACCIOLA:  How big is the Gray family check?

18          MR. ROESER:  Well, it's two checks for the Gray --

19          JUDGE FACCIOLA:  Could you rise?  I can't hear you.

20          THE COURT:  Why don't you come forward, Counsel.

21    It's good to get your name on the record so we have a clear

22    transcript of what's going on.

23          MR. ROESER:  Okay.  Zeke Roeser.  There are two

24    checks on the Gray parents.  One is for 17,000 and one is for

25    16,500, and those are made out to those three parties that I

```
1    mentioned.
2            THE COURT:  And for each one of those cases, these
3    are cases, or these are settlement sums to which the client
4    has agreed to; is that correct?
5            MR. ROESER:  Yes, Your Honor.
6            THE COURT:  So there's no question there about the
7    valuation of the claim, what the client wants.  The question
8    becomes --
9            JUDGE FACCIOLA:  The cash, I imagine.
10           THE COURT:  Yeah.
11           MR. ROESER:  Yes, Your Honor.  And they've -- we've
12   had those two checks on the Grays for over a week and my
13   clients are in fairly severe straits financially.  They've had
14   to take on loans.
15           JUDGE FACCIOLA:  Well, please discuss that during
16   your meet-and-confer.
17           MR. SWEETLAND:  We can agree right now, Your Honor,
18   that with respect to those three checks, if they put the
19   one-third into escrow for a few weeks, I don't think it's
20   going to impact anybody's continued ability to --
21           JUDGE FACCIOLA:  Does everybody agree to that?
22           MR. ROESER:  I agree to that.
23           MR. SALERNO:  We agree to that.
24           JUDGE FACCIOLA:  So do we --
25           THE COURT:  So the Grays can be paid then.
```

1            MR. ROESER:  I would like to do that as soon as

2    possible because they're in tough shape.

3            THE COURT:  All right.  What about escrow?  Can we

4    talk about that next?  Should it be registry of the Court or

5    is that going to be a problem?

6            JUDGE FACCIOLA:  It's up to you.  If you -- that's

7    something you should talk about in the meet-and-confer.  For

8    this particular purposes, I think you should deposit it into

9    the registry of the Court, all right, so make the check

10   payable to the Clerk of the Court.  Judge Sullivan and I will

11   work the --

12           THE COURT:  You mean for the one-third remaining?

13           JUDGE FACCIOLA:  Yeah.

14           THE COURT:  All right.  That's fine.

15           JUDGE FACCIOLA:  And then we'll decide.  We have no

16   interest whether you do it with a bank or you do it with the

17   registry of the Court.  We just have to make arrangements

18   through the --

19           THE COURT:  That's a good point, though, Judge,

20   because you're putting it in the registry of the Court, it's

21   not going to draw any interest either, I don't think.

22           JUDGE FACCIOLA:  No, I think we do pay interest.  I

23   don't know.  I'll check.  I'm on my way to finance and talk to

24   them about it.  I think you and I should meet with the Clerk

25   of the Court to talk about this.

1    MR. SWEETLAND:  I don't think that's going to be a

2    consideration.

3    THE COURT:  Right, because this case is going to be

4    history in two or three weeks from now.  It's going to be

5    resolved fully, right?

6    MR. SALERNO:  Your Honor, if we're talking about an

7    interim measure until we --

8    THE COURT:  Yeah.

9    MR. SALERNO:  And we can figure this out until next

10   week, then, you know, if they trust us to keep it in an escrow

11   account for the next week or so until we resolve this, we'll

12   be happy to do that.

13   MR. SWEETLAND:  We don't -- my client's position is

14   that nothing -- no proceeds should be kept in an account

15   controlled by Roeser & Whitlock and that any account has to

16   be -- either registry of the Court is fine, obviously, or has

17   been an escrow account that we've dealt with, the bank's

18   requirements as to putting the --

19   JUDGE FACCIOLA:  I prefer the registry of the Court.

20   I don't want to hassle with some general counsel of a bank who

21   says he needs this and he needs that.

22   THE COURT:  And it's not subject to liens of anyone.

23   We don't know what other liens -- hopefully there are no -- no

24   one who is going to assert a lien on a fiduciary.

25   JUDGE FACCIOLA:  And I think insurance companies

1    would be a lot more comfortable if we do it that way.  If we

2    make it the bank, they can't control it, so --

3            MR. SWEETLAND:  Very good.

4            JUDGE FACCIOLA:  Judge Sullivan and I will meet with

5    the Clerk of the Court since we just volunteered her, too, but

6    let's do it that way, all right.  And I think we'll issue --

7    Judge, may I recommend --

8            THE COURT:  Go ahead.

9            JUDGE FACCIOLA:  A joint minute order by us this

10   afternoon that gives everybody protection as to that, all

11   right.  We'll make the finding that certain fees are

12   outstanding, Roeser & Whitlock may pay the client, provided

13   they deposit one-third in the registry of the Court, all

14   right.  We'll get that out this afternoon.

15           MR. SWEETLAND:  Your Honor, there's one more very

16   serious issue that I would like to raise and it's particularly

17   appropriate with both of Your Honors present, and that is the

18   allegations that the sanctity of the mediation process was

19   violated, and a motion was filed to that effect last night.

20   We filed the opposition this morning, and if there is any

21   possibility we can resolve it now because obviously --

22           JUDGE FACCIOLA:  I haven't seen it, Counsel.

23           THE COURT:  I haven't seen it either.

24           JUDGE FACCIOLA:  What am I viewed as violating?

25           MR. SWEETLAND:  On the Exhibit A to the -- there was

1   an allegation that Exhibit A to the motion for appointment of

2   special master compromised the mediation process.

3            JUDGE FACCIOLA:  I haven't seen it.

4            MR. SWEETLAND:  That was --

5            JUDGE FACCIOLA:  What I suggest, Judge Sullivan, we

6   not look at it at this point, okay.  And is there any

7   objection to simply sealing it for the time being?

8            MR. SALERNO:  There is no objection to keeping it

9   sealed for the time being, but we would like to address the

10  issue of Mr. Slocumb speaking publicly about settlement

11  positions that were taken during the mediation.

12           JUDGE FACCIOLA:  Let me tell you, to go back to

13  square one, I didn't make a fuss about this because we were in

14  a settlement context but I wasn't too delighted to read about

15  this case in a blog of the Legal Times in which both of you

16  made statements.  So I think we should keep that to a minimum,

17  don't you, Your Honor?

18           THE COURT:  I totally agree with that.

19           JUDGE FACCIOLA:  I don't think Judge Sullivan and I

20  are delighted by gag orders.

21           THE COURT:  We've done that before.  We did it in

22  the Ringling Brothers case and we had to do it, and this case

23  should be tried in the courtroom.

24           JUDGE FACCIOLA:  It was a real circus.

25           MR. SWEETLAND:  Well, the only thing I would point

1  to -- and I need to make it because this allegation is so

2  serious.  I have to notify general counsel, I have to -- you

3  know, there are implications, when someone is accusing us of

4  civil contempt of court, that we have to deal with, and the

5  question for Your Honor is simply is our settlement offer that

6  we knew about before the mediation that we communicated during

7  the mediation --

8              THE COURT:  I don't know anything about a settlement

9  offer.  Now, I'm aware now this motion -- this motion was

10 filed and it's in this folder.  I have not read it and I don't

11 plan to read it.  My understanding of a motion was the motion

12 to appoint a master.

13             MR. SWEETLAND:  And I don't want --

14             JUDGE FACCIOLA:  With Your Honor's permission, may I

15 suggest --

16             THE COURT:  I'll seal this.  Yeah.

17             JUDGE FACCIOLA:  Neither I -- you or I will look at

18 it.  I will ask Judge Kay to look at it, all right.

19             MR. SWEETLAND:  All right.

20             JUDGE FACCIOLA:  And then we'll go from there.

21             THE COURT:  There should be a response to it.

22             JUDGE FACCIOLA:  No.  Is there any additional

23 briefing anybody wants?  It's --

24             MR. SALERNO:  Fully briefed.

25             THE COURT:  So the motion and response should be

```
 1    sealed then.  We'll seal them.

 2              JUDGE FACCIOLA:  Sealed from our evaluation as well.

 3              THE COURT:  We're not going to read that.  All

 4    right.

 5              JUDGE FACCIOLA:  We'll direct our clerks not to

 6    permit us to see it.  I'll talk to Judge Kay.

 7              THE COURT:  And my only understanding about the

 8    motion was that when I was leaving last evening, one of my

 9    clerks said the motion to appoint a special master has been

10    filed and she thought that it was being opposed, and I said,

11    well, that's something we'll discuss today, and so I haven't

12    read it.

13              JUDGE FACCIOLA:  That's all I know about it.

14              THE COURT:  I haven't read it and don't plan to read

15    it, and for the record, let me just be very clear about this.

16    I'm not aware of any details of any settlement discussions at

17    all that have been communicated to Judge Facciola.  His

18    concern was there's some clients who may be adversely

19    impacted.  He was concerned about it and he was concerned --

20    he didn't mention any names -- but was concerned about

21    sometimes clients do borrow against settlement.

22              He was concerned maybe that's happening, maybe not,

23    but we need to bring counsel in and talk about these and

24    maybe -- and he told me maybe there's a need for a receiver.

25    I think that's the word he used.  And I was out of the city,
```

1   and I said I totally agree, let's schedule the -- let's bring

2   them in for Friday, and that's why we're here.  That's all I

3   know about any discussions that you had, and I think that, if

4   that does not accurately state what we talked about.

5           JUDGE FACCIOLA:  It certainly does.

6           MR. SALERNO:  Without in any way revealing anything

7   that happened at the mediation, because you both of you said

8   you're not going to read it, the concern is that Mr. Slocumb

9   and in fact Mr. Sweetland is talking to reporters about an

10  offer that was made, communicated to us for the first time

11  during settlement and if we could just --

12          THE COURT:  I'm going to issue an order right now

13  that any settlement discussion -- this is -- I don't know but

14  I assume you gave them --

15          JUDGE FACCIOLA:  What goes on in this room stays in

16  this room and everybody --

17          THE COURT:  And I'm going to direct that counsel not

18  discuss publicly any offers to settle this case.

19          MR. SWEETLAND:  We can't discuss our own offers that

20  we make ourselves?

21          THE COURT:  In the public?

22          MR. SWEETLAND:  Yeah.

23          THE COURT:  No, no, I'm imposing that gag order.  If

24  the parties want to settle the case, that's fine.  Look, this

25  case is not going to be tried in the public.  I mean, it will

1   be tried in a public courtroom.  Settlement discussions are

2   not going to be communicated to the media.  If the parties are

3   interested in settlement, they can talk among themselves, but

4   I'm very serious.  This is a court order.  I'm directing that

5   any offers to settle this case or counterproposals not be

6   discussed with the public media.  That's the Court's ruling.

7                JUDGE FACCIOLA:  Thank you.

8                Is there anything else, Counsel?

9                MR. SALERNO:  No, thank you very much for your

10  attention.

11               JUDGE FACCIOLA:  Okay.  Thank you.  We'll be in

12  touch.

13               THE COURT:  Anything further?

14               MR. SWEETLAND:  No, Your Honor.

15               THE COURT:  All right.

16               JUDGE FACCIOLA:  I didn't mean to say that.

17               THE COURT:  All right.  Let's take five minutes

18  before we leave.

19               THE DEPUTY CLERK:  This honorable court will stand

20  in a five-minute recess.

21               (A BRIEF RECESS WAS TAKEN.)

22               THE DEPUTY CLERK:  Remain seated and come to order.

23               THE COURT:  All right, folks, we're going to meet

24  over the lunch hour, Judge Facciola and I, and we're going to

25  spell out, we're going to address the issues we talked about

1   this early afternoon in a minute order and there will be other

2   issues that we address.  The names of the 146 -- it's 146, at

3   least it was as of 12:00 o'clock or so, those names should be

4   given to the Plaintiffs, if not -- if they don't already have

5   the names.  Do they have the names?

6           MR. SALERNO:  They have the names.

7           MR. SWEETLAND:  Judge, because it's different and it

8   changes, it would be helpful, I think, if we could have a

9   master spreadsheet that each side maintains that they say of

10  what they -- you know, what they have so we can compare it to

11  ours.  We'll alphabetize them because our records show that

12  we've given them 90 files and I think we have 20 files left

13  for pickup today, which is a substantial difference from the

14  number I just heard.

15          So, if each side would maintain a master

16  spreadsheet, you know, we can go down, it would be a lot

17  easier and not just say, you know, you've already gotten

18  names.  Because yeah, we've gotten names, but because we get

19  them sporadically, it's not always clear to me that -- it's

20  really not easy for me, Your Honor.

21          THE COURT:  All right.

22          MR. SWEETLAND:  To be able to make

23  representations --

24          THE COURT:  We'll work it out.  We'll make it

25  crystal clear.  We'll work it out.  I understand your point,

```
 1   and I'll take your point.  All right.  We'll issue further

 2   guidance to the parties.  We'll schedule a hearing, another

 3   status hearing, probably be Thursday or so.  The responsive

 4   pleading is going to filed on Wednesday.  I'll just direct it

 5   be filed by noon on Wednesday so give everyone a chance to

 6   look at it and we'll talk on Thursday.  You're in trial next

 7   week, Judge.  Probably be 12:30 or 12:40.  Let's say 12:45.

 8   If it changes, we'll let you know.

 9              MR. SALERNO:  Your Honor, I appreciate that it's the

10   lunch hour.  I think the parties could benefit from some

11   guidance as to what further communications are permitted to

12   the --

13              THE COURT:  We're going to address that in the

14   minute order.

15              JUDGE FACCIOLA:  We're not finished yet.

16              MR. SALERNO:  Okay.  Thank you very much.

17              THE COURT:  We'll spell all that out.  Look, if

18   there are some exigent, I emphasize exigent, circumstances

19   that come up between now and Thursday, then the parties should

20   jointly let the Court know what those exigent circumstances

21   are, but we're going to address what happens if other

22   settlement checks come in between now and Thursday as well.

23              MR. SWEETLAND:  Yes, Your Honor.

24              THE COURT:  All right.  We'll give you some

25   guidance.
```

1          MR. SALERNO:  Thank you.

2          MR. SWEETLAND:  Thank you, Judge.

3          THE COURT:  And if you settle the case between now

4    and next Thursday, that's fine.  We wish you all well, okay.

5    All right.  Have a nice weekend, all right.

6          THE DEPUTY CLERK:  This honorable court is now in

7    recess.

8          THE COURT:  You can stay in here and talk about

9    settlement if you want.

10         MR. SWEETLAND:  We can't, Your Honor, there's a

11   court reporter present.

12         THE COURT:  He'll step outside.

13         Hi, how you doing?

14         He'll step outside.  All right.  Take care.

15         (PROCEEDINGS END AT 12:50 P.M.)

16                         *-*-*-*-*

17

18                 **CERTIFICATE OF REPORTER**

19         I, Catalina Kerr, certify that the foregoing is a

20   correct transcript from the record of proceedings in the

21   above-entitled matter.

22

23

24   _____   _____

     Catalina Kerr                      Date

25